**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4622**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DONALD CRAIG MELVIN,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:22-cr-00143-FL-1)

_____

Argued:  March 20, 2026                                         Decided:  July 27, 2026

_____

Before GREGORY, AGEE, and BENJAMIN, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Benjamin joined.  Judge Agee wrote a separate opinion concurring in part and dissenting in part.

_____

**ARGUED:**  Matthew Aaron Hughes, FOX ROTHSCHILD LLP, Greenville, South Carolina, for Appellant.  Tory D. Roberts, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Matthew Nis Leerberg, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellant.  Matthew R. Galeotti, Acting Assistant Attorney General, Josh A. Goldfoot, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; W. Ellis Boyle, United States Attorney, Lucy Partain Brown, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

GREGORY, Circuit Judge:

After Donald Craig Melvin pleaded guilty to one count of being a felon in possession of a firearm, the Probation Office filed a presentence report in anticipation of sentencing. The presentence report listed four of Melvin's prior convictions that the Probation Office believed qualified Melvin for an enhanced sentence under the Armed Career Criminal Act ("ACCA"). Melvin prevailed on objections to two of the four predicates, seemingly leaving him one short of qualifying for a mandatory sentencing enhancement under ACCA. But at the sentencing hearing, the Government proposed a new predicate which it had not raised prior. After granting a continuance, the district court accepted the proposed predicate offense and applied the ACCA enhancement to Melvin's sentence. Because the district court's actions violated Federal Rule of Criminal Procedure 32 and *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018), we vacate Melvin's sentence and remand for resentencing without the ACCA enhancement.

I.

Melvin pled guilty to one count of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). The Probation Office drafted a presentence report which identified four prior convictions as potential predicates for a sentencing enhancement under ACCA. Had the district court accepted three of Melvin's prior convictions as qualifying ACCA predicates, Melvin would have been subject to ACCA's mandatory 15-year minimum sentence. *See* 18 U.S.C. § 924(e). Melvin objected to three of the four proposed predicates within 14 days of receiving the presentence report, as required by the Federal Rules of Criminal

2

Procedure. Fed. R. Crim. P. 32(f). The Government did not file a sentencing memorandum or submit an objection to the presentence report.

At Melvin's sentencing hearing, the district court overruled the objection to one proposed predicate offense, but sustained the objection to two. This left Melvin with only two prior convictions that qualified as ACCA predicates. With only two ACCA predicates, Melvin's conviction warranted a 10-year maximum sentence, instead of the 15-year minimum sentence that would accompany three or more ACCA predicates. 18 U.S.C. §§ 924(a)(8), 924(e)(1).

In response to the district court's decision to grant Melvin's objections on two of the four proposed predicates, the Government raised another proposed predicate at the sentencing hearing. The Government suggested that a 1995 conviction should qualify as Melvin's third predicate offense, though they acknowledged that the conviction had not been designated as a potential predicate in the presentence report. The Government did not raise this proposed predicate in a pre-hearing objection to the presentence report, it explained, because it was "not entirely aware of the reason or the basis" for Melvin's objections and they did not think objections were necessary "based on seeing that there were four predicates." J.A. 112.

Over the objection of defense counsel, the district court granted a continuance for the Probation Office to consider whether the conviction identified by the Government should qualify as an ACCA predicate, and to file a supplement to the presentence report indicating its opinion. The district court also allotted time for the Government and the defendant to file objections to the supplemental presentence report. The supplemental

3

presence report recommended that the 1995 conviction identified by the Government should count as an ACCA predicate, and the district court accepted that conviction as Melvin's third ACCA predicate. The district court applied the ACCA enhancement, and Melvin received a 188-month sentence.

Melvin appealed his sentence. In response to his brief, the Government filed a motion for summary disposition which addressed the merits of Melvin's claims. Melvin filed a supplemental *Anders* brief, which the Government again responded to with a motion for summary disposition on the merits of Melvin's claims. After Melvin was appointed a new attorney for this appeal, he moved to strike from the record all earlier submitted briefs. We granted Melvin's motion to strike and permitted him to file a new opening brief. In its response to Melvin's new opening brief, the Government invoked Melvin's appeal waiver, in which Melvin agreed to waive his right to appeal from any sentence imposed except on the grounds of ineffective assistance of counsel or prosecutorial misconduct.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

II.

We must begin by determining whether the Government has successfully invoked a valid appeal waiver.[*] When the Government submitted two substantive motions, instead of invoking the appeal waiver, it forfeited its ability to claim the benefits of the waiver.

---

[*] Melvin presented an argument that the district court did not have subject-matter jurisdiction over his case because the crime did not occur on federal land. But district courts have jurisdiction over criminal cases arising out of federal offenses. 18 U.S.C. § 3231.

4

Local Rule of Appellate Procedure 27(f)(2) explains that a motion to dismiss "based upon the ground that the appeal is not within the jurisdiction of the Court or on other procedural grounds should be filed within the time allowed for the filing of the response brief." 4th Cir. R. 27(f)(2). When the Government does not promptly object to an appeal, we must "assume that the Government wishes the court to decide the case on the merits." *United States v. Oliver*, 878 F.3d 120, 128 (4th Cir. 2017). To have raised a waivable procedural objection, the Government must have invoked it "in the first brief it filed that made arguments regarding the proper disposition of claims it contended were covered by the waiver." *United States v. Ashford*, 103 F.4th 1052, 1056 (4th Cir. 2024).

We have already decided a substantially similar issue in *United States v. Kemp*, 88 F.4th 539 (4th Cir. 2023). In *Kemp*, the Government filed a motion to dismiss the appeal, arguing that the defendant's appeal was barred by his appeal waiver. *Id.* at 542. This Court requested supplemental briefing on two issues outside the appeal waiver. *Id.* at 543. In its briefing, the Government raised for the first time that the appeal should be dismissed as untimely. *Id.* We held that the Government forfeited its untimeliness argument by failing to raise it in its initial motion to dismiss. *Id.* at 544. Though we have held that the Government need not preserve its procedural arguments for purposes of Local Rule 27(f)(2) when a criminal defendant files an *Anders* brief, if the Government elects to respond, it must then invoke all the arguments for dismissal that it wishes to present. *See Ashford*, 103 F.4th at 1055–56.

Here, the Government had—and bypassed—two opportunities to invoke Melvin's appeal waiver. In response to two of Melvin's briefs, the Government addressed on the merits

5

of Melvin's claims with a motion for summary disposition. By declining to raise the appeal waiver in either of its responsive filings, the Government forfeited this argument by "wait[ing] too long to raise the point." *United States v. Hyman*, 884 F.3d 496, 498 (4th Cir. 2018).

The Government claims that it seeks only to do what Melvin has been permitted to do: file new briefing, with new arguments. But this Court has not barred the Government from making new, responsive arguments. As a matter of course, the briefing schedule ordered by this Court provided the Government with the opportunity to file a new response brief that countered Melvin's new opening brief. What it may not do, under Rule 27(f)(2) and *Kemp*, is invoke a new threshold argument that is "just as apparent from the record" as it was when the Government filed its first, and its second, motions for summary disposition. *Kemp*, 88 F.4th at 539; *see* Response Br. at 24 (indicating that the Government "opted to respond to Melvin's earlier claims on the merits").

"For purposes of efficiency and fairness, our legal system is replete with rules like forfeiture, which require parties to raise arguments themselves and to do so at certain times." *Wilkins v. United States*, 598 U.S. 152, 157 (2023). The Government may not hold its nonjurisdictional, procedural arguments in its back pocket, unveiling them only after other arguments have failed. By electing not to raise Melvin's appeal waiver in its initial filings, the Government has forfeited its opportunity to raise it at this stage.

## III.

We turn now to Melvin's argument that the district court erred by permitting the Government to propose an additional ACCA predicate at his sentencing hearing when it

6

had not objected to the presentence report. Because the Government did not present good cause for failing to object to the presentence report, it was error for the district court to allow the introduction of a new predicate offense.

The ACCA provides that persons convicted under 18 U.S.C. § 922(g) must receive a sentence of at least fifteen years in prison if they have been convicted of at least three predicate offenses—specifically, serious drug offenses or violent felonies. 18 U.S.C. § 924(e)(1). Procedurally, the district court learns of a defendant's predicate convictions by way of the presentence report, which must include "any factor relevant" to determining the appropriate sentence. Fed. R. Crim. P. 32(d). If any party objects to the presentence report, including to recommended sentencing enhancements and their predicates, that party must state the objection in writing within 14 days of receiving the report. Fed. R. Crim. P. 32(f)(1). An objection made orally at the sentencing hearing is generally untimely, unless the objecting party can show "good cause" for the late objection. Fed. R. Crim. P. 32(i)(1)(D).

We have made abundantly clear that courts must hold the Government to the same standards that it holds a defendant. *See United States v. Hodge*, 902 F.3d 420, 429 (4th Cir. 2018). Generally, if a defendant fails to object to material information within the presentence report within 14 days, the defendant is barred from raising objections at a later date. *See, e.g.*, *United States .v. Alem*, 2015 WL 3746157, at *2 (E.D. Va. June 15, 2015); *United States v. Tavernia*, 2014 WL 12877365, at *1 (W.D.N.C. May 15, 2014) ("[W]hen a sentencing court has given a defendant a full opportunity to dispute factual inaccuracies in a PSR and he fails to do so, the court does not deny the defendant due process in

7

imposing the sentence."). Nothing in Rule 32, which sets schedules for "parties[']" objections, suggests that district courts may give the Government special treatment with respect to the 14-day deadline. Fed. R. Crim. P. 32(f)(1).

Nor does it qualify as "good cause" to extend the 14-day deadline that the Government has an earnest desire to register a third ACCA predicate. Fed. R. Crim. P. 32(b)(2). At Melvin's original sentencing hearing, the Government explained to the district court that it did not object to the original sentencing report because it was "not entirely aware" of the basis for Melvin's objections, and because the presentence report already recommended four predicate offenses. J.A. 112. The district court did not make a finding that this constituted good cause to extend the deadline, nor could it have. The purpose of the 14-day window is to require the parties—all the parties—to make "diligent efforts to bring issues to the court's attention." *Hodge*, 902 F.3d at 429. "The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim," even when the claims have "legal significance." *Sanches-Llamas v. Oregon*, 548 U.S. 331, 356–57 (2006). Permitting the Government to belatedly raise a new predicate "would do a disservice to the efforts" of the sentencing court and the defense counsel, who constructed their sentencing strategy and expectations on the unimpeachable assumption that the Government had no objections to the presentence report. *See Kemp*, 88 F.4th at 544. When a party is aware of an argument in its favor, and elects—strategically—not to raise it within the time required, it can rarely overcome that forfeiture.

Our decisions in *Hodge, United States v. Benton*, 24 F.4th 309 (4th Cir. 2022), and *United States v. Winbush*, 922 F.3d 227 (4th Cir. 2019) underscore the point. In each of

8

those cases, the Government untimely identified a defendant's prior offense that the Government believed qualified as an ACCA predicate. *See, e.g.*, *Benton*, 24 F.4th at 313. We made clear that once the Government misses its opportunity to propose a predicate offense within the time allotted, it may not "change its position regarding which convictions support [a defendant's] enhancement now that one of its original choices . . . cannot do the job." *Winbush*, 922 F.3d at 231 (quoting *Hodge*, 902 F.3d at 430). "[I]t is unfair to allow parties to surprise one another with new arguments that they did not make at the appropriate procedural juncture." *Hodge*, 902 F.3d at 429. When the Government "has already been given one full and fair opportunity to offer whatever support for the [defendant]'s ACCA enhancement it could assemble," it "should not be allowed to introduce" additional evidence after that period has lapsed unless it can show good cause for its earlier failure. *Id.*

*United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) does not mandate otherwise. When Supreme Court precedent invalidated two of Rumley's ACCA predicates, the district court vacated his sentence and ordered a de novo resentencing. *Id.* at 543. In that circumstance, the Government was permitted to propose ACCA predicates that it had not proposed ten years prior. *Id.* This Court determined that *Hodge* did not apply in the context of an "entirely new resentencing"; indeed, the purpose of a de novo sentencing is to restart the sentencing process from scratch, so allowing the Government to put forth a new ACCA predicate poses no error. *Id.* at 545; *see also United States v. Al-Muwwakkil*, 983 F.3d 748, 765 (explaining that resentencing after a grant of a § 2255 motion restarts the sentencing

9

process). *Rumley* provides no guidance where, as here, the only sentencing procedure included an error.

Because there was no good cause argued, and no good cause found to permit extension of the Rule 32 period to object to the presentence report, it was error for the district court to permit the Government to introduce a new potential ACCA predicate.

## IV.

Finally, we must address whether the Rule 32 procedural error was harmless. *See Neder v. United States*, 527 U.S. 1, 7 (1999) (instructing reviewing courts to apply Rule 52(a)'s harmless-error analysis to procedural errors). We hold that the error was not harmless.

A procedural error at the sentencing stage "is harmless if the resulting sentence is not longer than that to which the defendant would otherwise be subject." *United States v. Dowell*, 771 F.3d 162, 175 (4th Cir. 2014). It is the Government's burden to show that "the court would have imposed the same sentence" in the absence of the error. *United States v. Shatley*, 448 F.3d 264, 267 (4th Cir. 2016).

In this case, it is straightforward that the sentence would not have been the same but for the Rule 32 error. If the district court had not allowed the Government to propose the predicate offense that it failed to timely raise, Melvin could not have received a sentence beyond 10 years. 18 U.S.C. § 924(a)(8). By virtue of the untimely predicate, Melvin received a 188-month sentence, or 8 months above the statutory minimum 15 years. *See* 18 U.S.C. § 924(e)(1). The error, therefore, resulted in at least an additional 5 years, 8 months incarceration. We cannot consider this harmless.

10

In arguing that any Rule 32 error was harmless, the Government relies on our precedent in *United States v. Dix*, 64 F.4th 230 (4th Cir. 2023). In that case, the Government argued at the sentencing hearing that a proposed sentencing enhancement should be based on a different offense than the presentence report had identified. *Id.* at 232. Though the presentence report had identified a different offense as triggering the sentencing enhancement, and the Government did not object to the presentence report, the district court accepted the Government's new argument and applied the enhancement. *Id.* We acknowledged that this procedure violated Rule 32, but we determined that the error was harmless because the defendant received sufficient notice to argue his position fully prior to sentencing. *Id.* at 236. In the Government's view, the same circumstances arise here: even though it failed to timely object, the Rule 32(f) error is harmless because the Government presented its objection before the district court finalized its sentence. Response Br. at 33 (quoting *Dix*, 64 F.4th at 236).

In effect, the Government reads *Dix* to suggest that there can *never* be harm so long as objections to the presentence report are presented "before sentencing." *See* Response Br. at 33 (quoting *Dix*, 64 F.4th at 236). That argument is not without support in the language of *Dix*, which emphasized that the Rule 32(f) violation was harmless because the sentencing enhancement "was grounded on the merits of the . . . enhancement, not on the timeliness of notice." *Dix*, 64 F.4th at 237. However, if we accepted the Government's reading of *Dix*, it would render Rule 32(f) a nullity; no party would be able to enforce the 14-day deadline if its violation is per se harmless. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018) (explaining that courts should reject constructions that "would

11

render an entire subparagraph meaningless"). As we explained above, "our legal system is replete with rules . . . which require parties to raise arguments themselves and to do so at certain times." *Wilkins*, 598 U.S. at 157; *see Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[R]ules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time."). The Government would have us erase Rule 32(f)'s 14-day deadline and impose our own rule that any objection is permissible so long as it is made at some point before sentencing. We are not empowered to do so.

We must also consider *Dix* in light of our preceding opinion in *Hodge*, which *Dix* does not purport to overrule. *See Dix*, 64 F.4th at 236 (distinguishing *Hodge*); *see also Gibbons v. Gibbs*, 99 F.4th 211, 215 ("[T]he rule that one panel cannot overrule another would be weak tea indeed if all a later panel had to do was identify a fact, theory, or argument a previous panel did not address."). In *Hodge*, we made clear that "when the Government or the sentencing court chooses to specify which of the convictions listed in the [presentence report] it is using to support an ACCA enhancement, it thereby narrows the defendant's notice of potential ACCA predicates from all convictions listed in the presentence report to those convictions specifically identified as such." *Hodge*, 902 F.3d 420, 428. We specifically noted that "the Government's failure to timely object" amounted to forfeiture of its arguments. *Id.* at 429. We enforce these rules to "prevent[] a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)). And "[w]hat is to be feared even more [than sandbagging] is a lessening of counsel's diligent efforts to bring issues to the court's

12

attention." *Id.* (cleaned up) (citing *Henderson v. United States*, 568 U.S. 266, 286 (2013) (Scalia, J., dissenting)).  In short, *Hodge* made plain that the Government's failure to timely object should not be so readily overlooked.

To reconcile *Dix* and *Hodge*, as well as our obligation to give force to each of the Federal Rules of Criminal Procedure, *Dix* must stand for the proposition that there is no *Hodge* violation when the Government presents its additional arguments before it receives an adverse ruling from the sentencing court.  In *Dix*, the Government presented its arguments late, but not so late that the sentencing court had already ruled against the Government on other grounds.  *See Dix*, 64 F.4th at 233.  By raising its second enhancement argument before the sentencing court ruled against its first, the Government demonstrated that it was not merely keeping an argument in its back pocket and "belatedly raising [it] only if the case [did] not conclude in [its] favor."  *Hodge*, 902 F.3d at 429.

The overlap between *Dix* and *Hodge* articulates what is already plain to any observer of a sentencing proceeding—that the prejudice of an untimely new argument falls more harshly upon the defendant if the argument is made after an adverse ruling than if the argument is made before.  Rule 32 forces all parties to present their objections ahead of the hearing, so that each party has the notice and opportunity to prepare its arguments and its strategy in advance of the hearing.  If the parties present arguments at the outset of the hearing, the district court can grant a continuance to remedy the Rule 32 violation— although that was unnecessary in *Dix*, where the defendant made "every argument" possible at the sentencing hearing.  *Dix*, 64 F.4th at 236–37.

13

Once a party loses at the sentencing hearing, however, the nature of the hearing changes. When the outcome of a sentencing hearing has been decided, parties share the "law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504; *see United States v. Vonn*, 535 U.S. 55, 73 (2002). The energies of preparing and executing a strategy for the sentencing hearing have been expended in order to reach a result. After each party has received a full opportunity to litigate the presentence report, an "unfair surprise" robs parties of the opportunity to "adjust their cases in light of new facts and issues." *LSREF2 Baron, LLC v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014); *see also Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988) (describing the prejudice that may occur when one party improperly gains access to an opposing party's trial strategy). The district court errs when it allows untimely arguments to subvert an opposing party's sentencing strategy.

Here, the Government elected to withhold its argument until after its first set of arguments failed to produce an ACCA enhancement. In these circumstances, *Dix* is not controlling. We are left with the fact that the district court's failure to abide by Rule 32 resulted in a longer sentence and therefore cannot be harmless.

We vacate Melvin's sentence and remand for the district court with instructions to resentence Melvin without the ACCA enhancement.

Accordingly, the judgment of the district court is

*VACATED AND REMANDED*.

14

AGEE, J., concurring in part and dissenting in part:

I agree that the Government failed to timely invoke Melvin's appeal waiver, and therefore join Section II of the majority opinion. But because I conclude that the district court made no error—let alone a prejudicial one requiring reversal—when sentencing Melvin, I respectfully dissent from Sections III and IV. Instead, for the reasons set out below, I would affirm Melvin's sentence.

## I.

The majority opinion imposes burdens on both the district court and the Government that the federal rules, Supreme Court case law, and circuit precedent do not demand of them. In so doing, the majority arbitrarily wrests control over sentencing hearings away from the entity that is in the best position to weigh the merits and equities of the parties' arguments when it sentences a defendant. And it again positions this Court as an outlier among our sister circuits. The record before us shows that the district court took great care before sentencing Melvin, and its actions afforded him all the process he was due.

Under the circumstances presented, the district court did not abuse its discretion in excusing the Government's failure to object to the PSR's listing of ACCA predicates and permitting it to raise a new potential ACCA predicate at the sentencing hearing. But even assuming that decision constituted procedural error (it was not), Melvin incurred no prejudice because the district court simultaneously continued sentencing to permit an updated PSR and additional briefing by both parties before reconvening to hear further arguments, determine that Melvin was an armed career criminal, calculate his Guidelines

15

range, and impose an ACCA-based sentence. Because no error—let alone a reversible one—occurred below, I would affirm Melvin's sentence. The majority errs in doing otherwise.

## A.

"The touchstone of [R]ule 32 [of the Federal Rules of Criminal Procedure] is reasonable notice to allow counsel adequately to prepare a meaningful response and engage in adversary testing at sentencing." *United States v. Angeles-Mendoza*, 407 F.3d 742, 749 n.12 (5th Cir. 2005) (cleaned up); *see United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999) ("Rule 32 requires that except in limited circumstances, the defendant must have the opportunity to review information that will be used for sentencing." (internal citation omitted)). But Rule 32's "manifest purpose . . . is not simply to resolve disputes between the parties; it is to ensure that the district court can meaningfully exercise its sentencing authority based on a complete and accurate account of all relevant information." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 591 (11th Cir. 2014).

To achieve these goals, Rule 32 requires, among other things, that the PSR identify "all applicable guidelines," "calculate the defendant's offense level," "state the resulting sentencing range and kinds of sentences available," and "identify any factor relevant to[] . . . the appropriate sentence." Fed. R. Crim. P. 32(d)(1)(A)–(D).[1] In addition, Rule 32 sets

---

[1] "Whe[n] the PSR specifically designates certain convictions as ACCA predicates and declines to designate others, it notifies the defendant that only the designated predicates will be used to support the ACCA enhancement." *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (cleaned up).

16

a deadline by which parties "must" object "to material information . . . contained in or omitted from the" PSR. Fed. R. Crim. P. 32(f)(1) ("Within 14 days after receiving the [PSR], the parties must state in writing any objections, including objections to material information, sentencing guidelines ranges, and policy statements contained in or omitted from the report."); *see also* U.S.S.G. § 6A1.2(b) (same). But "for good cause" a district court may "allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(i)(1)(D).

The majority opinion wrongly concludes that the Government violated this rule and that the district court did not have "good cause" to excuse that violation. To be sure, the Government did not object to the initial PSR, but with good reason. The PSR listed four potential ACCA predicate convictions, one more than needed for the provision to apply. The PSR did not, however, list Melvin's North Carolina federal conviction for conspiracy to possess with intent to distribute and distribution of cocaine base. Thus, Melvin was not notified before the initial sentencing hearing that his North Carolina federal drug conspiracy could serve as the basis for sentencing him as an armed career criminal. In hindsight, based on the subsequent events at the initial sentencing hearing, the Government should have timely objected to the PSR under Rule 32(f)(1) to ensure that it added a fifth potential predicate conviction, so as to give Melvin the notice he was otherwise entitled to under Rule 32(d). *See United States v. Dix*, 64 F.4th 230, 235 (4th Cir. 2023).

But that does not resolve the issue of whether a Rule 32(f)(1) violation occurred or whether any resulting procedural error requires resentencing. As noted above, under Rule 32(i)(1)(D), the district court may excuse the Government's failure for "good cause." And

17

we have recognized that "district courts have wide latitude to decide what constitutes good cause, and their findings can be made implicitly." *United States v. Henderson*, 159 F.4th 213, 219 (4th Cir. 2025). Other circuit courts have likewise acknowledged the deference that Rule 32's good cause standard affords district courts. *See United States v. Kleinman*, 880 F.3d 1020, 1039 (9th Cir. 2017) ("[T]he 'good cause' standard has been understood as a grant of discretion to district courts."); *United States v. Slater*, 168 F.4th 1044, 1050 (7th Cir. 2026) ("To be sure, the judge did not specifically couch her ruling in good-cause terms. Ideally, she would have done so. But 'good cause' is a uniquely flexible, fact-specific, and capacious concept. And given our highly deferential standard of review, we see no reason to second-guess the judge's exercise of discretion." (cleaned up)).

District courts are entrusted with the task of weighing the procedural protections afforded defendants under Rule 32 alongside the on-the-ground variables that arise in any sentencing hearing. To that end, Supreme Court precedent discussing Rule 32's myriad notice requirements repeatedly recognizes that Rule 32's purpose is to "provide[] for focused, adversarial development of the factual and legal issues relevant to determining the appropriate [] sentence." *Burns v. United States*, 501 U.S. 129, 134 (1991), *limited by Irizarry v. United States*, 553 U.S. 708 (2008).[2] "Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the

---

[2] When *Burns* was decided, "the Guidelines were mandatory[.]" *Irizarry*, 553 U.S. at 713. Given that change, the Supreme Court has recognized that some of Rule 32's notice provisions no longer carry the full weight of due process concerns that they once did. *See id.* at 713–14.

18

[sentencing] hearing, *and in the hearing itself*, has given them an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715 (emphasis added).

Thus, when it comes to handling a Rule 32 timing, notice, or objection violation, district courts have considerable discretion. For instance, they can decide not to entertain untimely objections to the PSR. *E.g.*, *Slater*, 168 F.4th at 1050 ("[B]ecause the good-cause determination is committed to the court's discretion, a judge is not obliged to entertain an untimely objection to a PSR." (cleaned up)). Or they may consider whether to excuse the timing violation. *E.g.*, *Angeles-Mendoza*, 407 F.3d at 749 ("Although the government may have violated rule 32(f)(1) by failing to give timely notice in writing, the court did not abuse its discretion in allowing the government to make its objection at the sentencing hearing, based on the fact that the government had demonstrated some measure of 'good cause,' and the omission caused no prejudice to these defendants' ability to prepare adequately for sentencing[.]" (footnotes omitted)). And, of course, district courts may also proceed in other permissible ways under the circumstances.

All this to say, nothing in the Supreme Court's precedent or its discussion of Rule 32's purposes has suggested that its deadlines should be implemented with the sort of rigid enforcement mechanism that the majority opinion demands.

Here, although the district court did not make an explicit good cause finding, it plainly did so implicitly. Before deciding how to proceed, the district court thoroughly considered both parties' positions about allowing the Government to proffer a previously unidentified potential predicate conviction to support an ACCA sentence and the propriety of a continuance. Specifically, it heard the Government's explanations that it had not

19

previously objected because (1) the PSR already listed one more predicate offense than was necessary to support the ACCA, and (2) it was "not entirely aware of the reason or the basis for the objections" to relying on Melvin's New York convictions as predicates. S.J.A. 112. The Government noted, for example, that since filing his initial objections, Melvin's arguments had expanded and evolved, leading to the district court's ruling that they did not qualify as predicates. The district court also heard from Melvin that he was prepared to be sentenced that day, did not want a continuance, and that he had not received notice or an "opportunity to prepare and to respond" to the previously unidentified potential ACCA predicate conviction the Government now proffered to support sentencing as an armed career criminal. S.J.A. 110. The district court responded that it "want[ed] to get this right" and would permit a continuance of several weeks to allow Melvin to prepare his defense.[3] S.J.A. 114. To that end, the court set deadlines to permit the probation officer to prepare a letter updating the PSR in light of the potential new predicate conviction, to allow the Government to advance its position, and to permit Melvin to have the "last word in briefing" before reconvening for his sentencing. S.J.A. 113. By proceeding in this way, the district court implicitly concluded that good cause existed ("get[ting] this right") to excuse the Government's failure to otherwise timely object to the initial PSR.

---

[3] Melvin has never argued that he was not given sufficient time to prepare his defense as to why the North Carolina federal drug conspiracy should not been counted as a predicate ACCA offense. Much the opposite—at the beginning of the post-continuance sentencing hearing, Melvin's counsel acknowledged that he had received the notice *Hodge* contemplated.

20

Given our deferential standard of review, I would not disturb the district court's assessment permitting the Government to proffer a previously unlisted potential ACCA predicate conviction. The parties provided their arguments and the Government offered reasonable explanations for why it acted as it did—including both the evolutions in Melvin's arguments objecting to the listed predicate convictions *and* its recognition that the PSR initially listed one more potential ACCA predicate conviction than necessary to establish Melvin's career criminal status. In opposition, Melvin pointed solely to his desire to be sentenced immediately and his alleged inability to defend against the newly proffered predicate being used against him at that moment. Before acting, the district court weighed those arguments as well as its own responsibility to have before it the information it needed to properly impose Melvin's sentence. *See* S.J.A. 114 ("I had pretty much . . . without regard to the government's argument, decided I want to get this right."); *see also Slater*, 168 F.4th at 1050 (observing, as part of its reasoning affirming the district court's decision to excuse the Government's "eleventh-hour objection" to the PSR, that the district court recognized that "she had 'the ultimate responsibility' to ensure that the Guidelines range was correct" and "risked serious procedural error" should she not do so).[4]

Thus, in reaching its implicit decision to excuse the Government's untimely objection to the PSR, the district court understood the variables and assessed concerns salient to Rule 32's purposes. No basis exists to disturb that exercise of discretion,

___

[4] As the majority opinion recognizes, while the ACCA sentencing enhancements are driven by statute, they factor into a defendant's Guidelines offense-level calculation and therefore his Guidelines range.

21

particularly in light of the continuance, as discussed later in the context of harmlessness. *See, e.g.*, *Angeles-Mendoza*, 407 F.3d at 749 (holding that a district court had not "abuse[d] its discretion in allowing the government to make its objection at the sentencing hearing, based on the fact that the government had demonstrated some measure of 'good cause,' and the omission caused no prejudice to the[] defendants' ability to prepare adequately for sentencing" (footnotes omitted)).

By concluding that "good cause" could not exist here, the majority opinion relies on cases that do not address Rule 32 at all, and thus have nothing to say on what circumstances a district court could rely on to assess good cause under Rule 32(i)(1)(D). Specifically, the majority relies on *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018), and its progeny— cases which address *other* concerns about the process defendants must be afforded before a particular potential ACCA predicate offense can be used against them to support their sentence. I detail how those cases line up with this case when discussing harmlessness. For now, it's sufficient to note that none of them discuss Rule 32(f)(1)'s notice requirement or occurred in a similar context to this case, where the Government identified a new potential predicate offense that had not been listed in the PSR before the defendant was sentenced.

The majority compounds its error by concluding that "good cause" cannot exist here because the Government's failure to object to the PSR was "strategic[]" and established the parties' and district court's expectations for sentencing, such that it would "surprise" and "sandbag[]" Melvin not to hold the Government to the PSR's original list of ACCA predicates. Maj. Op. 8 (first  and second quotes), 9 (third quote), and 12 (fourth quote). Nothing in the record supports the majority's imputation of nefarious motives on the

22

Government. Nothing. The Government's deadline for filing Rule 32(f)(1) objections was the same as Melvin's, and up until that date, it had no basis for believing the PSR should list even more potential ACCA predicate convictions. After all, the PSR already listed four—one more than is needed to support the ACCA enhancement. As discussed in the context of harmlessness, our caselaw at that time did not foreclose the Government from relying on an unlisted conviction at sentencing, so long as certain procedural considerations were satisfied before doing so. The Government thus had no reason to believe that it was necessary to identify every single potential predicate conviction before the sentencing hearing at the cost of being definitively barred from relying on others. And the Government certainly had no basis for predicting the majority's novel reinterpretation of our past case law to *require* it to raise all such potential predicate convictions. Instead, the Government complied with its obligation to do so before Melvin's sentence was imposed, and the district court was entitled to decide whether to allow it to do so.

Moreover, as the prosecutor explained at sentencing, the Government did not file objections to the initial PSR because it already listed more potential ACCA predicate offenses than were necessary to support sentencing Melvin as an armed career criminal and because the grounds Melvin had raised to challenge those predicates were unclear. In other words, it made a judgment call and the district court ultimately ruled in favor of Melvin as to two of the predicate offenses originally identified in the PSR. But this progression by no means suggests that the Government acted deceptively. To the contrary—when the Government identified a potential fifth predicate conviction, it informed the district court that the newly identified conviction could not be relied on unless Melvin was afforded a

23

continuance and the process he was due to challenge its use against him. And as discussed later, the subsequent continuance eliminated any concerns of "surprise" or "sandbagging" that *Hodge* addressed. There's simply no basis in past caselaw to support the notion that the Government's identification of a potential ACCA predicate conviction after the PSR but before sentencing cannot be based on "good cause" under the circumstances that occurred here.

The practical effect of the majority opinion's ruling is to place an unnecessary and significant burden on everyone involved in the sentencing process going forward. Make no mistake, it will unnecessarily bog down and complicate sentencing hearings. Probation officers will now be directed to scour for every potential predicate conviction, and the Government will need to object to any plausible convictions that have not been listed in the PSR, no matter how many above the requisite three are already listed. That, in turn, increases the likelihood of defendants objecting to the inclusion of some or all of those potential predicates, else risk possible forfeiture of their own arguments in opposition. All this in turn requires more of district courts in response to and advance of or during a sentencing hearing. That unfounded mandate from the majority charts a course far from what is necessary to comport with the purpose and procedural protections secured by Rule 32's notice requirements.

What's more, the majority's reasoning creates even greater drift between this Court and that of our sister circuits. *Hodge* previously adopted the most stringent limit of any circuit courts' approach to deciding when an undesignated conviction can be used *post-sentencing* to support an ACCA-based sentence. *Compare Tribue v. United States*, 929 F.3d

24

1326, 1332–34 (11th Cir. 2019) (permitting the government, under certain circumstances, to rely on a conviction that had not been designated in the PSR as an ACCA predicate to support an ACCA-based sentence when challenged on collateral review), *with United States v. Bentley*, 49 F.4th 275, 284–88 (3d Cir. 2022) (outlining the various approaches taken and charting a "middle-course" between the Fourth Circuit's approach in *Hodge* and the Eleventh Circuit's in *Tribue*), *and Dotson v. United States*, 949 F.3d 317, 320–22 (7th Cir. 2020) (adopting a similar middle-ground, fact-based approach between *Hodge* and *Tribue*, citing "concerns about notice to defendants" and preferring a narrow fact-based assessment focused on whether habeas petitioner could show "undue surprise" if the court relied on an undesignated conviction to support an ACCA-based sentence).[5]

And now the majority holds that Rule 32(f)(1) and *Hodge* somehow operate together to require the Government to identify all possible ACCA predicates *before* an adverse district court ruling about any potential predicates during sentencing, *irrespective of* the existence of notice, a continuance, and opportunity to respond being afforded to a defendant. This albatross is not required by the Constitution, binding case law, or Rule 32. And in imposing it, the majority burdens our sentencing courts in ways other circuit courts have flatly rejected. *See Bentley*, 49 F.4th at 288 ("[S]o long as defendants had adequate notice that an ACCA predicate was reasonably on the menu of options during the original criminal case, judicial resources warrant better investment" than requiring "prophylactic

---

[5] To be clear, *Hodge*'s merits are not at issue in this case. Its reasoning simply has no bearing on the district court's ability to consider a predicate conviction not designated in the PSR so long as a defendant is given notice and an opportunity to respond when his sentence is imposed.

25

prior-identification" of all potential predicates, which "'risks producing expansive litigation at sentencing over whether each and every prior felony in a defendant's criminal history constitutes a qualifying ACCA predicate.'" (cleaned up)); *United States v. Báez-Martínez*, 950 F.3d 119, 133 (1st Cir. 2020) (rejecting defendant's request to "do what no other court has done: hold that the government must specifically and exhaustively designate all ACCA predicates from the outset, or else forfeit ACCA sentencing"); *Tribue*, 929 F.3d at 1332 ("[T]here is no requirement that the government prospectively address whether each and every conviction listed in the criminal history section of a [PSR] is an ACCA predicate in order to guard against potential future changes in the law and avoid later claims that it has waived use of those convictions as qualifying ACCA predicates.").

At bottom, the majority's conclusion simply substitutes its own judgment preferences for the district court's, something that we are not free to do. The complaints the majority raises—including a defendant's "sentencing strategy and expectations," Maj. Op. 8—are matters appropriately folded into the *district court's* assessment of how to proceed given the nature of the specific Rule 32(f) violation.

For the reasons set out above, the district court did not operate outside its "wide latitude" in excusing the Government's failure to timely object to the initial PSR's listing of four, but not additional, potential ACCA predicate convictions. I would affirm that determination and proceed to consider whether the district court complied with our other caselaw affording the defendant the necessary procedural protections when the

26

Government relies on a potential ACCA predicate that has not been listed in the initial

PSR.[6]

B.

Even if a procedural error occurred during Melvin's initial sentencing hearing (it

didn't), any such error is harmless. "Any error, defect, irregularity, or variance that does

not affect [a defendant's] substantial rights must be disregarded." Fed. R. Crim. P. 52(a).

The Government bears the burden of showing that an error was harmless. *Dix*, 64 F.4th at

235. That burden is met here because as part of the district court's decision to excuse the

Rule 32(f) noncompliance, the court simultaneously granted a continuance and allowed the

---

[6] In *Dix*, we observed that the district court committed procedural error at sentencing by allowing the Government to rely on a predicate conviction that had not been identified in the PSR as a potential basis for supporting a Guidelines enhancement and the omission of which the Government had not timely objected to under Rule 32(f). 64 F.4th at 235. We then proceeded directly to whether that error was harmless without first considering whether good cause existed to excuse the Government's Rule 32(f) noncompliance. *Id.*

That approach made sense in *Dix* because there, the district court permitted the Government to rely on the previously unidentified predicate during the same sentencing hearing, but did not allow a continuance for the defendant to respond to why that offense did not qualify as a predicate. The identified procedural error was the combined effect of the Government's noncompliance with Rule 32(f) coupled with the district court permitting the argument to be made without affording the defendant the notice required under Rule 32(d) by failing to grant a continuance. *See id.* at 235–37.

In sharp contrast, here, the district court halted the initial sentencing hearing when the Government sought to rely on the previously unidentified potential predicate conviction. It then ordered the probation officer to file an updated PSR—which provided the requisite Rule 32(d) notice to the defendant—and permitted both parties adequate time to respond to the conviction's use as an ACCA predicate. In other words, no procedural error occurred at all because the district court ensured Rule 32 was complied with before holding the sentencing hearing at which it imposed the defendant's sentence. And *Dix* does not suggest the Government's noncompliance with Rule 32(f)(1)'s timing requirements necessitates review for harmlessness without first considering the possibility that good faith excused that noncompliance.

27

full adversarial process to carry out as to the merits of whether Melvin's North Carolina federal drug conspiracy conviction qualified as an ACCA predicate before sentencing him as an armed career criminal.

As a starting point, a continuance typically cures noncompliance with Rule 32's notice requirements because it affords the procedural safeguards the rule envisions a defendant receiving. *See Irizarry*, 458 U.S. at 716 (observing, when considering other notice provisions in Rule 32, that the "appropriate response [would be] . . . for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise [at the sentencing hearing] was prejudicial"); *United States v. Soto-Beniquez*, 356 F.3d 1, 52 (1st Cir. 2003) ("Any possible prejudice to [the defendant] from the government's non-compliance [with Rule 32(f)(1)] was cured by the district court's grant of a two-week continuance to give defense counsel an adequate opportunity to respond to the government's late submission."); *see also United States v. Atencio*, 476 F.3d 1099, 1105 (10th Cir. 2007), *abrogated on other grounds by Irizzary*, 553 U.S. 708 (order denying initial en banc review) ("We will generally assume that a reasonable continuance cures Rule 32(h) error, rendering it harmless by allowing parties adequate time to prepare to contest or support the variance—just as they could have, had they received notice prior to the sentencing hearing. This procedure both promotes the focused, adversarial resolution of the legal and factual [sentencing] issues contemplated by *Burns*, and avoids inefficient appellate litigation by permitting the court below to cure its error." (cleaned up)).

The majority opinion points to no reason why the continuance here did not afford Melvin a full opportunity to marshal arguments opposing use of the North Carolina federal

28

drug conspiracy conviction as an ACCA predicate for purposes of establishing whether he was an armed career offender. Instead, its reasoning focuses solely on the Government's failure to object before sentencing. But that focus is misdirected back onto the original perceived error, rather than whether that error was cured. What's more, Melvin has never argued—in district court or on appeal—that the continuance did not afford him adequate time and opportunity to prepare his arguments about why the North Carolina federal drug conspiracy conviction did not qualify as an ACCA predicate.

Equally relevant to assessing harmlessness, a district court's own independent obligations at sentencing counsel it to deviate from previously unchallenged parts of a PSR so long as a defendant's due process rights are protected. *See Henderson*, 159 F.4th at 219 ("[T]he government's failure to timely object to the presentence report didn't relieve the district court of its independent duty to calculate Henderson's proper guideline range, which includes consideration of applicable enhancements."); *see also United States v. Young*, 140 F.3d 453, 457 (2d Cir. 1998) ("The sentencing court may impose sentencing enhancements belatedly suggested by the Government and not contained in the PSR, provided the defendant is afforded an adequate opportunity to respond to the Government's late submission and any revision of the PSR." (internal citation omitted)). The majority opinion's myopic focus on the timeliness of an initial *Government* objection to the PSR improperly elevates the Government's position in sentencing above that of the district court. But in assessing prejudice arising from a Rule 32 violation, it no longer matters precisely who (the Government or the district court) or how (in the PSR or the sentencing hearing) Melvin was informed that something could be used against him at sentencing.

29

Instead, the cases cited above demonstrate that the relevant concern is whether the defendant has been offered a meaningful opportunity to engage in the adversarial process that those rules were designed to provide. And as explained, Melvin had that opportunity here.

On the harmlessness of a Rule 32(d) and (f)(1) error in the context of applying a sentencing enhancement, *Dix* is particularly instructive and controlling. There, the PSR identified one conviction as the predicate to support a sentencing guidelines enhancement. The Government did not file objections to the PSR, but at sentencing it proffered an alternative conviction as a potential predicate to support that enhancement. 64 F.4th at 232–34. Dix's counsel opposed the use of the unlisted predicate, but also opposed its use on the merits, after which the district court agreed that the enhancement should apply based on the Government's alternative, newly proffered predicate conviction. It then calculated Dix's Guidelines range consistent with that determination and imposed a sentence under the § 3553(a) factors. *Id.* at 234.

In concluding that the procedural error of not complying with Rules 32(d) and (f) was harmless, the Court noted that Dix had not "request[ed] a postponement or request[ed] that he be given a corrected presentence report," nor had he "identified any additional act that he would have liked to take or any procedure that he would have liked to follow had he been notified in advance of the sentencing hearing that the [alternative conviction] might be used to support the enhancement." *Id.* at 236. In contrast to *Hodge*, "this [was] not a case where the defendant was sentenced without the opportunity to object and make arguments regarding the applicability of an enhancement." *Id.* Instead, it was a delayed

30

notice under Rule 32, from before sentencing to *during* sentencing. *Id.* And because Dix had a full opportunity to argue his position about the validity of the enhancement before he was sentenced, "no prejudice resulted from the untimeliness of the notice." *Id.* In so holding, we clarified that when considering harmlessness, the Court's focus is *not* on whether the defendant would otherwise have been sentenced without a particular enhancement, but rather whether any prejudice arose from "the erroneous delay of notice" itself. *Id.* at 237.

The majority opinion skews *Dix*'s analysis so as to avoid a finding of harmlessness in this case. But if anything, *Dix* was a closer call on harmlessness than this case because Melvin received not just notice at sentencing but also a fully adequate continuance before his sentence was imposed. And *Dix*'s reasoning demonstrates why Melvin cannot demonstrate harm arising from any Rule 32 violation.

First, he and the majority opinion ignore *Dix*'s instruction that in assessing prejudice, we look to the prejudice from *untimely notice* about which predicate offense may support a sentencing enhancement—not from a sentence that is based on application of the sentence enhancement. On that misdirection, *Dix* could not be clearer: "That position [] implies that if [the defendant] had more time, he would not have received the [] enhancement and therefore [his same] sentence. That conclusion, however, does not logically follow because the [] sentence was grounded on the merits of the [] enhancement, not on the timeliness of notice." *Id.* Second, as was true in *Dix*, Melvin "receive[d] notice *before sentencing* and enough before to argue his position fully." *Id.* at 236. Indeed, Melvin received notice at his initial sentencing hearing before the Guidelines range was ever

calculated. And rather than proceeding directly to substantive arguments on the unlisted potential predicate conviction, the district court continued the hearing to permit the parties to have more time. The probation office then prepared a supplemental letter to the PSR outlining its position on the North Carolina federal drug conspiracy conviction being used as an ACCA predicate, the Government outlined its view, and Melvin had time to respond on the merits. Then, at the reconvened sentencing hearing several weeks later, Melvin and the Government yet again argued the procedural and substantive components of Melvin being sentenced as an armed career criminal. In other words, he was provided with full notice and ample opportunity to be heard *before* he was ever sentenced as an armed career criminal. Under *Dix*, nothing more was required to demonstrate the harmlessness of any Rule 32 violation as to the timing of his initial notice.

The majority opinion correctly recognizes that *Dix* did not purport to overrule *Hodge*, but it then crafts new law in its endeavor to reconcile the two decisions. But in so doing, the majority ignores the patently obvious way *Dix* and *Hodge* can be reconciled. In fact, it's how *Dix* itself distinguished *Hodge*: whether the Government sought to rely on a new ACCA predicate *before* or *after* the court imposed the ACCA-based sentence. The defendant in *Hodge* demonstrated prejudice because the Government proffered a potential predicate conviction to support his sentencing enhancement only years *after* he had been sentenced. 64 F.4th at 236. "Because the new predicate offense was identified *for the first time on collateral review*, we reasoned that requiring a defendant to respond to a new basis for application of an enhancement in that context would 'unfairly deprive [the defendant] of an adequate opportunity to respond' because '[w]hereas at sentencing the Government

32

has the burden of proving by a preponderance of the evidence' that the enhancement applies, 'on collateral review the defendant has the burden of proving' that it does not." *Id.* (quoting *Hodge*, 902 F.3d at 429–30). That's the common sense and proper way to understand how *Hodge* and *Dix* can both be good law in this circuit, not the majority's newly spun theory about whether the district court has actually rendered a ruling against the Government. *Dix* said no such thing, nor did *Hodge*. The only timing concerns addressed in either case was whether the defendant had already *been sentenced* at the time the Government proffered a newly identified potential predicate conviction to serve as the basis of the sentence.

Indeed, that's the same critical timing distinction that we have made in each of our cases grappling with *Hodge*. Let's review a handful of them and recount why they support the foregoing understanding of that precedent:

- In *United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020), we held that when a defendant is resentenced, the revised PSR (and therefore the Government) can rely on ACCA predicate convictions that had not been designated as such during the original sentencing. *Id.* at 542. We explained that no *Hodge* error occurred under these circumstances "because *Hodge* is grounded on the defendant's lack of notice and opportunity to contest an ACCA predicate identified for the first time during a collateral proceeding" and thus "does not govern where, as here, the defendant had both notice and a meaningful opportunity to challenge the designated predicate convictions prior to the resentencing hearing." *Id.* at 545.

  *Rumley* fully supports that a *Hodge* error did not occur here because Melvin—like the defendant in *Rumley*—had notice and an opportunity to challenge the merits of whether a proffered potential ACCA predicate conviction counts against him *before* he was sentenced under the statute's enhanced sentencing provisions.

- In *United States v. Benton*, 24 F.4th 309 (4th Cir. 2022), "the district court relied on prior convictions that were not identified as predicates in Benton's [PSR] and of which he had no notice *at sentencing*" to deny Benton's 28

33

U.S.C. § 2255 motion that argued that his ACCA-based sentence had been based on convictions that "intervening Supreme Court decisions" rendered no longer "qualifying predicate convictions." *Id.* at 311 (emphasis added). Concluding that *Hodge* "control[led] the outcome here," *id.* at 313, the Court explained that substitution of new potential predicates *after* sentencing failed to afford Benton adequate notice and opportunity to "make his case under the appropriate burden of proof," *id.* at 314.

*Benton* did not tread any new ground from *Hodge* and thus is plainly distinguishable from what occurred in this case for the same reasons previously described.

- In *United States v. Al-Muwwakkil*, 983 F.3d 748 (4th Cir. 2020), we applied *Hodge* to reject the Government's argument that we could rely on a conviction that had not been identified in a § 2255 movant's PSR as an ACCA predicate to deny his motion, *id.* at 764–65, but observed that *Rumley* supported the view that "nothing in *Hodge* prevents a district court, after the grant of a § 2255 motion for resentencing, to sentence a defendant as an armed career criminal based on prior convictions that had not been designated as ACCA predicates during the original sentencing," *id.* at 765.

  By following the distinctions drawn in *Hodge* and *Rumley*, *Al-Muwwakkil* reinforces the critical time frame during which a defendant must be given notice and an opportunity to object to a particular conviction being used as the basis for an ACCA-enhanced sentence: *before* imposition of his sentence. It's thus in full alignment with a finding of harmlessness in this case.

- In *United States v. Winbush*, 922 F.3d 227 (4th Cir. 2019), a § 2255 movant argued that his trial counsel rendered constitutionally ineffective assistance of counsel "for failing to challenge his career offender status." *Id.* at 229. The Court rejected the Government's contention that Winbush failed to demonstrate prejudice "because even if his counsel had objected [that one of the PSR-listed convictions could not serve as a predicate], the district court could have sentenced Winbush as a career criminal based on [a different conviction that had not been listed in the PSR as a potential predicate for the Guidelines enhancement]." *Id.* at 230. We observed that "[t]he same concerns animating our decision in *Hodge* [were] present" because "Winbush was given no notice *at sentencing* that [the unlisted] conviction could be utilized as a predicate conviction for a career offender enhancement, and the government ha[d] already been given one full and fair opportunity to offer whatever support for the career offender enhancement it could assemble." *Id.* at 230–31 (cleaned up) (emphasis added).

  *Winbush* followed *Hodge,* and extended its principles to a non-ACCA sentencing enhancement context. But it says nothing that contradicts the principle that the pertinent time frame for establishing a *Hodge* violation

34

occurs when—*after* a sentence has been imposed—the Government attempts to rely on previously unidentified predicate convictions to support that sentence. The circumstances of this case remain perfectly in harmony with its holding and reasoning.

In sum, Melvin's case falls squarely under *Dix*, not *Hodge*, and in line with the cases recognizing the critical distinction between a potential predicate offense being identified and utilized *before* a defendant is sentenced (i.e., at his sentencing hearing) versus *after* he has been sentenced. Melvin was subjected to the ACCA's enhanced sentencing provisions (1) only *after* the Government argued at sentencing that a previously unidentified conviction qualified as an ACCA predicate, *see Hodge*, 902 F.3d at 429–30; *Benton*, 24 F.4th at 311; *Winbush*, 922 F.3d at 230; (2) only *after* a continuance, during which the probation officer submitted a supplement updating the PSR identifying the North Carolina federal drug conspiracy conviction as a predicate conviction for ACCA purposes; (3) only *after* supplemental briefing by the parties as to the propriety of relying on this conviction as an ACCA predicate; and (4) only *after* full argument at the reconvened sentencing hearing. And, to reiterate, all of the above-recounted notice and opportunity to be heard occurred *before* the district court imposed the sentence now challenged as being based on procedural error. All of this irrefutably shows the harmlessness of any Rule 32 timing-of-notice violation and why *Hodge* and its progeny fully support this conclusion.

The majority's meager defense against this straightforward application of our precedent posits that it "render[s] Rule 32(f) a nullity; no party would be able to enforce the 14-day deadline if its violation is per se harmless." Maj. Op. 11. Not so. As discussed earlier, district courts retain discretion whether to permit an untimely objection in the first

35

instance. They are the gatekeepers because they are in the best position to understand the nuances of an individual sentencing process. Further, when a defendant can demonstrate prejudice from how the district court handled a Rule 32(f) violation, we rightly recognize that reversible error. But Melvin has shown no prejudice, and Congress directs that appellate courts should only reverse in the event of prejudicial error. This directive tips the balance in favor of harmlessness And Rule 32(f) is no exception to that balance. The Government's failure to timely object to the initial PSR resulted in no prejudice to Melvin because the district court protected his procedural rights before imposing an ACCA-based sentence.

## II.

For these reasons, any Rule 32 notice error—even if one occurred—was harmless. I therefore respectfully dissent and would affirm the district court's sentence. Moreover, the circuit split expanded by the majority opinion here augurs for review by the Supreme Court to definitively resolve the issue.